**In re N. C. CARROLL & SONS GRAVEL CO. et al.**

**Bankr. No. 296–B–I.**

United States District Court, D. Kansas.

Feb. 23, 1951.

---

Marion Beatty, Topeka, Kan., for petitioners E. Lee Carroll, Gale R. Carroll, and Maxine Koerner.

A. Harry Crane, of Crane, Martin & Snyder, Topeka, Kan., for Arthur L. Claussen, trustee.

MELLOTT, Chief Judge.

The issues presently before the court arise upon petitions to review orders of the referee in bankruptcy. In the petition filed on behalf of two of the bankrupts—E. Lee Carroll and Gale R. Carroll—it is charged the referee erred in refusing to set apart to each a tract of 160 acres claimed as an exempt homestead. In the other, the validity of an order made by the referee, denying the claim of a daughter of two of the bankrupts and a sister of the other two that she was the owner of certain real estate at bankruptcy, is assailed. The issues will be considered in the order stated.

Summarizing the uncontroverted findings of the referee, the partnership and the four partners, on February 8, 1950, were adjudged bankrupts. The five cases were duly consolidated. About 1938 the four individual bankrupts, husband, wife and two sons, who then had very little property, entered into the business of constructing roads under contracts with the State Highway Commission of the State of Kansas. They prospered and the partnership appears to have had a net worth of approximately $46,000 in 1943. During that year the partners purchased a ranch in Wabaunsee county, which they stocked with cattle and other livestock. At about that time they entered into a written partnership contract, which has been lost, agreeing to do business under the partnership name shown in the caption hereof, although in some instances transactions were carried on in some other name. The referee has found that "in whatever form the name was used it was the intent and purpose of the parties that they were doing business as a partnership, consisting of the four parties, in which they shared equally in the profits and losses."

The referee also found, and this is the only finding assailed by the two bankrupts who have petitioned the court for review, that the partners had agreed "They were equal owners in the property then [i. e. 1943] owned by them." However, they also contend the referee placed too much reliance upon income tax returns and financial statements, arguing that the making of the returns "was due to their inexperience in bookkeeping and accounting and does not show that the farm land and homes" in issue, were "intended to be partnership property rather than belonging to" the bankrupts E. Lee Carroll and Gale R. Carroll. But to return to a recitation of the basic facts shown in the findings.

From the beginning of the partnership various financial statements, some prepared by certified public accountants, were filed, listing property having a substantial value in addition to "a farm in Wabaunsee county of the value of" $44,000 or more. Regular annual income tax statements filed with the collector of internal revenue were all made in the name of the partnership and showed the interest of each of the partners to be a one-fourth interest in the Wabaunsee county farm, as well as in the other partnership property.

The record title to the Wabaunsee county ranch, which was carried as an asset of the partnership, was in the name of N. C. Carroll. On February 23, 1949, N. C. Carroll and his wife, Vera E. Carroll, entered into a contract of sale of the ranch for a consideration of $90,000, to be paid by the purchaser as follows: by assuming a mortgage of $17,000, conveying the title to an apartment house in Manhattan, Kansas,

of the value of $45,000, and paying the balance of $28,000 in cash. The contract was fully executed. The title to the apartment house in Manhattan was taken in the name of Vera E. Carroll. The $28,000 cash was paid into the partnership account and used in the payment of partnership debts and in the conduct of the business of the partnership. A loan of $20,000 was obtained on the apartment house and the proceeds thereof were paid into, and became a part of, the partnership fund and this amount was also used in the operation of the partnership business.

In May, 1949, N. C. Carroll negotiated the purchase of 400 acres of land in Jackson and Pottawatomie counties, Kansas, for a consideration of $14,000. Seven Thousand Five Hundred ($7,500) Dollars of this amount was paid out of the partnership funds, the balance of the purchase price being derived from a loan of $6,500 on the land by an insurance company. The title to the land was taken in the name of E. Lee Carroll and Gale R. Carroll, the deeds being recorded on June 14, 1949.

On February 7, 1950, E. Lee Carroll and Gale R. Carroll each executed a deed to the other for a stated consideration of One Dollar, reciting a conveyance to each grantee of 160 acres of the Jackson county land. Each of the bankrupts was married and had previously moved his family into one of the houses located on the property described in the deed above referred to, and each, with his family, was living on the tract described at the time the petitions in bankruptcy were filed. The wives of the respective grantors in the deeds did not join in the execution of the deeds and each deed contained a clause reciting: "All of the above parcels totaling One Hundred Sixty (160) acres, more or less, * * * being hereby set aside as the homestead of * * * in accordance with G.S. 60–3502, Kansas Statutes."

Extended discussion of the principles of homestead exemptions under the Bankruptcy Act and the statutes of Kansas seems not to be required. Th parties agree that three things must exist—ownership, family and residence. They also agree, as found by the referee, that the last two exist in this proceeding. The point of difference is whether the referee's finding and conclusion that ownership in the claimants has not been proven, is correct.

After making thirteen detailed findings, only one of which is assailed, the referee summed up his views in this language:

"The fact is well established that at the beginning of this partnership it was agreed that all of the property owned by the individual members should become and be considered the property of the partnership. The subsequent conduct of the parties shows clearly that this was their purpose and intent. When the ranch was purchased it was taken in the name of N. C. Carroll. When it was sold the proceeds from the ranch were placed immediately in the funds belonging to the partnership and used in carrying on the business of the partnership. The title to the apartment house in Manhattan was taken in the name of Vera E. Carroll, one of the partners. It was immediately mortgaged and the proceeds from the mortgage went into the partnership and was used in the partnership business. The land in question was purchased with partnership funds and legal title taken in the name of the objector hereto. At no place in the record or in the conduct of the parties do we find any individual claim to the property until we reach the question of the homestead. It seems to me that the fair interpretation of the partnership contract, supplemented by the conduct of the parties, is such that the court can not avoid finding that the land in question was partnership property and if partnership property, the objectors are not entitled to claim it as a homestead.

"The deeds dated February 7, 1950, and recorded February 9, 1950, have, in my judgment, no bearing on the case. If a homestead could have been established it came into being when the home was established on the land. The deeds do not have the joint consent of husband and wife, and if a homestead existed they would be void under the Constitution. On the other hand two of the partners, in a partnership consisting of four people, can not, by a conveyance, destroy the title of the partnership."

The rule of this court, pertaining to review of a finding of fact by its referee, (Rule VII) requires "a concise statement of the evidence relating thereto, with appropriate references to the transcript." Learned counsel for the parties seeking review state, upon brief, that they encounter some difficulty in complying with the rule "for the reason that they cannot find excerpts from the transcript which appear to be the basis for" the challenged findings, saying: "There are approximately 1000 pages of transcript and if there is any concrete evidence on this point no doubt the Trustee's attorney will come forth with same in his answer on brief * * *."

The challenge is met, in part, by counsel for the trustee, who, after quoting from the testimony of Vera E. Carroll, incorporates, as the conclusion of that phase of the controversy, the following significant observation and question by the referee: "Well, as a matter of fact, what you did with that money was to put it into the partnership account, and you made that payment to the brother [broker?], and you got that land, that was taken in the names of the boys; and the rest of it was paid out wherever the pressure was the heaviest, whether they were private bills or partnership bills?" To which the witness responded "yes."

██ The unchallenged findings of the referee support the summation in his memorandum opinion. The history of the partnership indicates the partners, no doubt quite properly, were desirous of making a good showing in connection with the dealing of the partnership with banks and the State Highway Commission. It was but natural, therefore, that they should, as found by the referee, agree "they were equal owners in the property then owned by them and that they would share equally in all future losses or profits." That they kept the property in, and considered it as belonging to, the partnership cannot be gainsaid. This court, therefore, finds itself in agreement with the referee "that the fair interpretation of the partnership contract, supplemented by the conduct of the parties, is such that * * * [it] cannot avoid finding that the land in question was partnership property * * *

and the objectors [bankrupts E. Lee Carroll and Gale R. Carroll] are not entitled to claim it as a homestead." The holding of the referee on the first issue is, therefore, approved and confirmed.

The facts pertaining to the claim of Maxine Koerner, daughter of bankrupts N. C. Carroll and Vera E. Carroll, stem from the acquisition of the apartment house in Manhattan, Kansas, in connection with the disposition of the Wabaunsee county ranch. The apartment house was valued, in that transaction, at $45,000.

The referee found that the deed to the apartment house, free and clear of incumbrances, had been taken in the name of Vera Carroll, the deed being dated February 23, 1949, and recorded April 7, 1949; that the bankrupts' records and accounts, including the ledger of the partnership kept by Vera, after the trade, showed the apartment house as an asset of the partnership; and that Vera and her husband entered into a contract of trade of the apartment house to E. E. Giles, for the real estate presently in issue (520 acres of land in Pottawatomie county, 80 acres of land in Jackson county and a house and two lots in Manhattan). A part of the Pottawatomie county land was subject to a mortgage balance of $1500 and the Manhattan property was subject to a mortgage balance of $4,500, which Vera and N. C. Carroll agreed to assume.

Summarizing the remaining (XI through XVI) findings of the referee, deed to the apartment house to Giles, dated August 15, 1949, executed by Vera and N. C. Carroll, was recorded on the 10th day of October, 1949. Deed from Giles and his wife, dated the same day, conveying the Pottawatomie county and Jackson county land and the house and lots in Manhattan, was executed by Giles and his wife on the same date, viz., August 15, 1949, the grantee in that deed being Maxine Koerner, daughter of Vera and N. C. Carroll. N. C. Carroll stated "he was putting it in his daughter's name for the reason he had a lot of law suits pending in Pottawatomie county." The deed was not recorded until December 5, 1949.

December 6, 1949, was the opening day of the term of the District Court of Pottawatomie county. There was a suit pending in that court against the partnership and also one against N. C. and E. Lee Carroll. On December 4, 1949, N. C. Carroll and Vera, on the one hand, and a creditor on the other, attempted to make settlement, the Carrolls proposing to deed the land in question to the creditor. Deeds were drawn but the settlement was not consummated. Nothing was said about anyone else having an interest in the land. In a financial statement of N. C. Carroll, filed just prior to the above dates, he set out that he owned the Pottawatomie county and the Jackson county lands.

Maxine Koerner paid nothing for the real estate covered in the deed from Giles, never had the deed in her possession and never took actual possession of the real estate. Shortly after the deed was executed, she signed a power of attorney to all of the property in favor of her mother, Vera.

N. C. Carroll had full charge of the property and was in possession thereof from the time the Giles deed was executed until, and even after, bankruptcy. Maxine Koerner had nothing to do with handling the property, received no money from the sale of parts of it or from the rent of other parts. Vera and N. C. Carroll negotiated a sale of the Manhattan property, and N. C. Carroll collected and kept the downpayment in the amount of $1,500, the house being sold under contract. Vera Carroll, under power of attorney, executed a deed to the purchaser, which was left in the possession and control of N. C. Carroll and Vera.

N. C. Carroll and Vera, likewise, handled a sale of the 80 acres of Jackson county land, N. C. Carroll receiving and keeping a downpayment of approximately $2,000. Vera E. Carroll executed the papers under the power of attorney. During these negotiations, N. C. and Vera Carroll referred to the property as their land and the purchaser did not know it stood in the name of Maxine Koerner until the contract of sale was drawn up.

N. C. Carroll referred to the Pottawatomie county land as his land and requested a real estate agent to sell it for him. He operated the land, and his wife, Vera, under power of attorney, signed a lease on a portion of it, the proceeds of the rent being received and kept by N. C. Carroll.

The referee found that the apartment house "was actually an asset of N. C. Carroll & Sons Gravel Company and at least by the time it was traded to E. E. Giles and the said deed went on record on December 5, 1949, which consummated said trade and thus placed the record title in Maxine Koerner, the partnership above mentioned, became insolvent. * * *."

On behalf of Maxine Koerner, it is argued she and her father and mother, all testified and contend the property in question "was transferred to her partially in payment of approximately $900 of her money used by N. C. Carroll in starting from scratch in the gravel business about 1938, and partially in compensation for money left by her grandmother to her, but which was also used by N. C. Carroll in the gravel business. * * * in view of the fact that the Carrolls started with very little capital in their gravel business and pyramided it to huge profits, * * * Maxine Koerner was entitled to more than mere interest on the $900 and * * * if the members of the partnership decided to pay her more or even give her partnership or individual property, it was their legal right to do so, so long as they were solvent and the transfer was not going to hinder, delay or defraud creditors or reduce their capital to an unreasonably low figure. Petitioner contends that the Referee should have so held."

It is apparent the referee declined to take that view. He held that the apartment house was an asset of the bankrupts and a part of the partnership estate; that it was exchanged for the property in question under contract between the bankrupts and the owner of the land; that Maxine's claim was only colorable, she having contributed nothing to the consideration for the property placed in her name; that the bankrupts "took possession of the land and exercised all the rights and privileges of ownership;" and that "the bankrupts were insolvent without this asset, and probably

with it." The undisputed facts and the excerpts of the testimony called to the attention of this court, in its studied judgment, justify the conclusion reached by the referee.

A troublesome question of procedure was argued before the referee and is renewed upon brief in support to the petition for review. The following excerpts from petitioner's brief point up the issue: "Petitioner strenuously contends that the Referee had no jurisdiction to deal summarily with her land and thus deprive her of a full plenary hearing in re the matter. She was a stranger to the bankruptcy case. * * * She did not consent [that the referee deal with the property summarily]. The Referee [in holding her title colorable only], decided the case on its merits first and then decided because of the merits he had jurisdiction. * * * Property in possession of a third person is not subject to summary jurisdiction. * * * Where the jurisdictional allegation of possession of property by bankrupt is made and denied, the party making allegation has the burden of proving the challenged allegation and, if it is not proved or admitted, Referee must dismiss proceedings."

In the main, the quotations set out well-established legal principles. They were recognized and applied by the referee, as is obvious from his memorandum opinion. He held "* * * the evidence is clear and the court has found the property was in the possession and control of the bankrupts at bankruptcy and the court has jurisdiction to determine the issues." In other words, he put upon "the party making the jurisdictional allegation of possession" (the trustee), "the burden of proving the challenged allegation." The referee was satisfied that the burden of proof had been met. This court is irresistibly impelled to take the same view. Such lingering doubt as the court may have had as to the correctness of the referee's conclusion is dispelled completely by the testimony of Maxine Koerner and Vera Carroll, copious excerpts of which are set out in the brief of the trustee. The court refuses to set aside the order complained of. Cf. Shaw v. Thompson, 5 Cir., 1950, 184 F.2d 572.

Appropriate orders in accordance with the views herein expressed shall be prepared by counsel for the trustee. Settle in accordance with the Federal Rules of Civil Procedure and the Rules of Practice of this court.